UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
VINCENT MARCHESE

                        Plaintiff,

                                                                               COMPLAINT AND
            -against-                                            JURY DEMAND

THE CITY OF NEW YORK, POLICE OFFICER SCOTT     Docket No.
CURRAN SHIELD # 5768, JOHN DOES #1-5

                                        Defendants,                ECF CASE
------------------------------------------------------------------x

Plaintiff Vincent Marchese, by his attorneys, Stoll, Glickman & Bellina, LLP, for his complaint alleges as follows:

## PRELIMINARY STATEMENT

1. This is a civil rights action in which plaintiff seeks relief through 42 U.S.C. §1983 for the violation of his Fourth and Fourteenth Amendment rights.

2. The claim arises from a March 6, 2012 incident in which Officers of the New York City Police Department ("NYPD"), acting under color of state law, intentionally and willfully subjected plaintiff to, among other things, assault, battery, and false arrest.

3. Plaintiff seeks monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

4. This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §1983 and §1988 and the laws and Constitution of the State of New York.

5. The jurisdiction of this court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of pendent jurisdiction.

6. The amount in controversy exceeds $75,000.00 excluding interest and costs.

## VENUE

7. Venue is laid within the Eastern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Eastern District.

## PARTIES

8. Plaintiff is a United States Citizen who resided at all times here relevant in Staten Island New York.

9. The City of New York (or "the City") is a municipal corporation organized under the laws of the State of New York. At all times relevant hereto, Defendant City, acting through the New York Police Department (or "NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

10. Officer Scott Curran, Shield # 5768, was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. Defendant Curran is sued in his individual capacity.

11. John Does #1-5 are individuals whose names are currently unknown to plaintiff, and are employees of the NYPD. John Does #1-5 did engage in a conspiracy to cover up the actions of defendant Curran. John Does #1-5 are sued in their individual capacity.

12. At all times here mentioned defendants were acting under color of state law, to wit,

under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## NOTICE OF CLAIM

13. Within 90 days of the events giving rise to this claim, plaintiff filed written Notice of Claim with the New York City Office of the Comptroller. Over 30 days have elapsed since the filing of that notice, and this matter has not been settled or otherwise disposed of.

## FACTUAL ALLEGATIONS

14. On March 6, 2012 at approximately 1:30 pm, plaintiff was driving alone in his car on Bay Street in Staten Island, New York.

15. Plaintiff, looking in his rear view mirror, saw a dark colored vehicle approaching him at a high rate of speed.

16. Defendant Curran was the driver of the dark colored vehicle.

17. Plaintiff attempted to get out of the way of the vehicle, but was unable to.

18. The dark colored vehicle collided with plaintiff's car.

19. Following the collision plaintiff pulled his vehicle over to the side of the road, and exited his vehicle.

20. Defendant Curran continued through the next intersection before pulling over and getting out of his vehicle.

21. Plaintiff and defendant Curran walked towards one another.

22. Plaintiff expressed his frustration with defendant Curran's driving.

23. Defendant Currant responded by cursing and yelling at plaintiff.

24. Defendant Curran grabbed plaintiff by his neck and forcibly threw him against the back of defendant Curran's vehicle.

25. Defendant Curran announced that he was arresting plaintiff, produced his police issued handcuffs and began to place plaintiff under arrest.

26. Defendant Curran then released his hold on plaintiff's neck, either allowing him to fall to the ground, or intentionally forcing him to the ground.

27. Defendant Curran then got back into his vehicle and drove away from the scene.

28. As defendant Curran drove away, plaintiff studied the vehicle's license plate so that he could report it to other police officers.

29. A few minutes later a marked police car approached plaintiff and stopped to assist him.

30. Plaintiff explained the incident to the officers and reported the license plate number for defendant Curran's vehicle as CDL1497.

31. Plaintiff attempted to report the assault and attempted arrest by defendant Curran; however the officers would only issue a motor vehicle accident report and refused to take a report on the subsequent assault.

32. Numerous witnesses to the accident and assault volunteered to give statements to the officers. However, the officers recorded only one witness' information on the accident report. Upon information and belief, the officers refused to take reports from any additional witnesses.

33. Plaintiff was taken to Richmond University Medical Center by ambulance where he was treated in the emergency room.

34. A police officer went with plaintiff to the hospital. After plaintiff was discharged the officer asked plaintiff to go the police precinct to speak with the officer's superior.

35. Plaintiff spoke with the supervising officer at the precinct.

36. During that conversation the supervising officer attempted to dissuade plaintiff from making a complaint to the Internal Affairs Bureau (IAB).

37. The supervising officer acted in manner intended to intimidate plaintiff and discourage him from reporting defendant Curran's conduct.

38. Plaintiff in fact cooperated fully with IAB's investigation, speaking to investigators on multiple occasions. Nevertheless, upon information and belief, the IAB investigation has failed to produce any meaningful discipline of defendant Curran or the officers who attempted to cover up his actions.

39. As a result of the force used by defendant Curran plaintiff did suffer a concussion, nerve damage and extensive and ongoing neck and back pain.

40. Plaintiff was treated for these injuries at various specialists including a neurologist, a chiropractor and a physical therapist.

41. As a result of these injuries plaintiff missed several weeks of work.

42. At all times during the events described above, the defendant police officers were engaged in a joint venture and formed an agreement to violate plaintiff's rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events. They failed to intervene in the obviously illegal actions of their fellow officers against plaintiff.

43. During all of the events above described, defendants acted maliciously and with intent to injure plaintiff.

## DAMAGES

44. As a direct and proximate result of the acts of defendants, plaintiff suffered the following injuries and damages:

   a. Violation of his rights pursuant to the Fourth and Fourteenth Amendments to the United States Constitution to be free from an unreasonable search and seizure of

his person;

b. Violation of his rights to Due Process of Law under the Fourteenth Amendments to the United Stated Constitution;

c. Violation of his New York State Constitutional rights under Article 1, Section 12 to be free from an unreasonable search and seizure;

d. Violation of his New York State Constitutional rights under Article 1, Section 6 to due process;

e. Physical pain and suffering:

f. Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety;

g. Loss of liberty;

h. Lost wages;

i. Damage to property.

## FIRST CAUSE OF ACTION
(42 U.S.C. § 1983)

45. The above paragraphs are here incorporated by reference.

46. Defendants have deprived plaintiff of his civil, constitutional and statutory rights under color of law and have conspired to deprive him of such rights and are liable to plaintiff under 42 USC § 1983.

47. Defendants' conduct deprived plaintiff of his right to be free of unreasonable searches and seizures, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution. Defendants' conduct also deprived plaintiff of his right to due process of law, pursuant to the Fourteenth Amendment of the United States Constitution.

48. Defendants falsely arrested plaintiff, used excessive force against him, and failed to

intervene in each other's obviously illegal actions.

49. Plaintiff has been damaged as a result of defendants' wrongful acts.

## SECOND CAUSE OF ACTION
(MUNICIPAL AND SUPERVISORY LIABILITY)

50. The above paragraphs are here incorporated by reference.

51. The City is liable for the damages suffered by plaintiff as a result of the conduct of their employees, agents, and servants, in that, after learning of their employees' violation of plaintiff's constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event. The City has been alerted to the regular use of excessive force and false arrests by its police officers, but has nevertheless exhibited deliberate indifference to such excessive force and false arrests; that deliberate indifference caused the violation of plaintiff's constitutional rights in this case.

52. Following this incident plaintiff immediately reported the illegal actions by defendant Curran. The City, through its employees, failed to adequately respond to this incident. Its employees actively sought to cover up the illegal conduct of defendant Curran and engaged in a course of intimidation designed to prevent plaintiff from reporting this incident. Moreover, even when an IAB investigation was conducted, the City failed to take appropriate disciplinary action. This type of response insulates police officers from criminal and civil liability, thereby encouraging illegal behavior such as that which was perpetrated against plaintiff.

53. The aforesaid event was not an isolated incident. The City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of

law, that a disturbing number of their police officers use excessive force, unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

54. For example, the well documented failures of the Civilian Complaint Review Board ("the CCRB"), a City agency, to substantiate obviously meritorious citizen complaints have gone uncorrected. The CCRB regularly finds complainants lack credibility based on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to them. In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB. The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD, once finding misconduct by an officer.

55. The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct. The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized. Furthermore, in the extraordinarily rare event that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer.

56. Further, the City has no procedure to notify individual officers or their supervisors of

unfavorable judicial review of their conduct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected. Additionally, according to a report of the New York City Bar Association issued in 2000, the City has isolated their law department from the discipline of police officers, so that civil suits against police officers for actions taken in their capacity as police officers have no impact on the officers' careers, regardless of the outcome of the civil actions. Alan Hevesi, as New York City Comptroller, in 1999 reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.

57. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiff's civil rights, without fear of reprisal. Furthermore, although the City has been on notice, through plaintiff's complaints to the IAB from the first day of the incidents complained of, the City has failed to remedy the wrong.

58. Plaintiff has been damaged as a result of the deliberate indifference of the City to the constitutional rights of the City's inhabitants.

59. The City is liable for the damages suffered by plaintiff as a result of the conduct of their employees, agents, and servants, in that, after learning of their employees' violation of plaintiff's constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event. The City has been alerted to the regular use of excessive force and false arrests by its police officers, but have nevertheless exhibited deliberate indifference to such excessive force

and false arrests; that deliberate indifference caused the violation of plaintiff's constitutional rights in this case.

### THIRD CAUSE OF ACTION
(ASSAULT)

60. The above paragraphs are here incorporated by reference.

61. Defendants made plaintiff fear for his physical well-being and safety and placed him in apprehension of immediate harmful and/or offensive touching.

62. Defendants have deprived plaintiff of his civil, constitutional and statutory rights and have conspired to deprive him of such rights and are liable to plaintiff under common law, and New York State laws and Constitution.

63. Plaintiff was damaged by defendants' assault.

### FOURTH CAUSE OF ACTION
(BATTERY)

64. The above paragraphs are here incorporated by reference.

65. Defendants engaged in and subjected plaintiff to immediate harmful and/or offensive touching and battered him.

66. Defendants used excessive and unnecessary force with plaintiff.

67. Defendants have deprived plaintiff of his civil, constitutional and statutory rights and have conspired to deprive him of such rights and are liable to plaintiffs under common law, and the New York State Constitution.

68. Plaintiff was damaged by defendants' battery.

### FIFTH CAUSE OF ACTION
(FALSE ARREST AND ILLEGAL IMPRISONMENT)

69. The above paragraphs are here incorporated by reference.

70. Defendants subjected plaintiff to false arrest, false imprisonment, and deprivation of

liberty without probable cause.

71. Defendants intended to confine plaintiff.

72. Plaintiff was conscious of the confinement and did not consent to it.

73. The confinement of plaintiff was not privileged.

74. As a result of the false arrest, imprisonment, and deprivation of liberty, plaintiff was damaged.

## SIXTH CAUSE OF ACTION
(CONSTITUTIONAL TORT)

75. The above paragraphs are here incorporated by reference.

76. Defendants, acting under color of law, violated Plaintiff's rights pursuant to §§ 5, 6 and 12 of the New York State Constitution.

77. A damages remedy here is necessary to effectuate the purposes of §§ 5, 6 and 12 of the New York State Constitution, and appropriate to ensure full realization of plaintiff's rights under those sections.

## SEVENTH CAUSE OF ACTION
(NEGLIGENT HIRING & RETENTION)

78. The above paragraphs are here incorporated by reference.

79. Upon information and belief, defendant City, through the NYPD, owed a duty of care to plaintiff to prevent the physical and mental abuse sustained by plaintiff.

80. Upon information and belief, defendant City, through the NYPD, owed a duty of care to plaintiff because under the same or similar circumstances a reasonable, prudent and careful person should have anticipated an injury to plaintiff or those in a position similar to plaintiff's as a result of this conduct.

81. Upon information and belief, defendant officers were incompetent and unfit for their

positions.

82. Upon information and belief, defendant City knew or should have known through exercise of reasonable diligence that the officer defendants were potentially dangerous and had previously falsely arrested civilians without probable cause.

83. Upon information and belief, defendant City's negligence in hiring and retaining the officer defendants proximately caused plaintiff's injuries.

84. Upon information and belief, because of the defendant City's negligent hiring and retention of defendant officers, plaintiff incurred damages described above.

## EIGHTH CAUSE OF ACTION
(RESPONDEAT SUPERIOR)

85. The above paragraphs are here incorporated by reference.

86. Defendants' intentional tortious acts were undertaken within the scope of their employment by defendant City of New York and in furtherance of the defendant City of New York's interest.

87. As a result of defendants' tortious conduct in the course of their employment and in furtherance of the business of defendant City of New York, Plaintiff was damaged.

## NINTH CAUSE OF ACTION
(CONSPIRACY)

88. The above paragraphs are here incorporated by reference.

89. Defendants agreed to violate the plaintiffs' rights in the manner described above. Further defendants made an agreement to attempt to cover up the assault committed by defendant Curran.

90. Defendants took action in furtherance of this agreement by refusing to issue a report based on plaintiff's complaints of being assaulted, refusing to take witness statements, by

attempting to dissuade plaintiff from reporting defendant Curran's conduct, and by using intimidation to scare plaintiff into not reporting defendant Curran's conduct to the IAB.

91. Plaintiff was injured as a result of defendants' conspiracy.

## TENTH CAUSE OF ACTION
(NEGLIGENCE)

92. The above paragraphs are here incorporated by reference.

93. Defendants owed plaintiff a duty of care.

94. Defendants breached that duty when defendant Curran struck plaintiff's vehicle with his car. Moreover, defendants breached that duty when defendant Curran allowed plaintiff to fall to the ground.

95. Defendant's breaches actually and proximately caused plaintiff's injuries.

96. The injuries plaintiff suffered were reasonably foreseeable results of defendant's negligence.

WHEREFORE, plaintiff demands judgment against the defendants, jointly and severally, as follows:

A. In favor of plaintiff in an amount to be determined by a jury for each of plaintiff's causes of action;

B. Awarding plaintiff punitive damages in an amount to be determined by a jury;

C. Awarding plaintiff reasonable attorneys' fees, costs and disbursements of this action; and

D. Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: February 15, 2013
       Brooklyn, New York

TO:   New York City
       Corporation Counsel Office
       100 Church Street, 4th floor
       New York, NY 10007

       Officer Scott Curran, Shield # 5768
       NYPD - Brooklyn Court Section
       210 Joralemon Street, 4th Floor
       Brooklyn, NY, 11201

Respectfully yours,

*[signature]*

By: Nicholas Mindicino, Esq.
Bar#: NM0437
Stoll, Glickman & Bellina, LLP
Attorneys for Plaintiff
475 Atlantic Avenue
Brooklyn, NY 11217
P: (718) 852-3710
F: (718) 852-3586
NMindicino@stollglickman.com